IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE CROTTY**

STAN LEE MEDIA, INC., a Colorado
Corporation,

      Plaintiff,

v.

MARVEL ENTERTAINMENT,
INC., a Delaware Corporation, MARVEL
ENTERPRISES, INC., and MARVEL
CHARACTERS, INC., a Delaware
Corporation,

      Defendants.
_____/

**07 CV 2238**

Civil Action No.:

JURY TRIAL DEMANDED



## COMPLAINT

COMES NOW, the plaintiff, STAN LEE MEDIA, INC., a corporation organized and existing under the laws of the State of Colorado, and sues the defendants, MARVEL ENTERTAINMENT, INC., a corporation organized and existing under the laws of the State of Delaware, MARVEL ENTERPRISES, INC., a corporation organized and existing under the laws of the State of Delaware, and MARVEL CHARACTERS, INC., a corporation organized and existing under the laws of the State of Delaware, and in support thereof, states as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Lanham Act claims set forth below by virtue of 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), and over the other claims set forth below by virtue of 28 U.S.C. § 1338(b) and of pendent jurisdiction.

2.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the activities and events occurred in this district and the defendants are

1

conducting business and/or have principal office locations within this district.

## PARTIES

3.     Plaintiff, STAN LEE MEDIA, INC., is a corporation organized and existing under the laws of the State of Colorado, formerly known by name as Boulder Capital Opportunities, Inc., a Colorado Corporation, which is the successor in interest to Stan Lee Media, Inc., a Delaware Corporation, which was the successor in interest to Stan Lee Entertainment, Inc., a Delaware Corporation.

4.     Defendant, MARVEL ENTERTAINMENT, INC., is a corporation organized and existing under the laws of the State of Delaware, and at all times material hereto has regularly and continually conducted business and had a principal office located within the Southern District of New York.

5.     Defendant, MARVEL ENTERPRISES, INC., is a corporation organized and existing under the laws of the State of Delaware, and at all times material hereto has regularly and continually conducted business and had a principal office located within the Southern District of New York.

6.     Defendant, MARVEL CHARACTERS, INC., is a corporation organized and existing under the laws of the State of Delaware, and at all times material hereto has regularly and continually conducted business and had a principal office located within the Southern District of New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.     From 1941 through approximately November 9, 1942, Stan Lee was employed by Timely Comics, a company then owned by Martin Goodman, with its principal place of business located in New York, New York (hereinafter referred to as "Timely Comics").

2

8.      From approximately November 9, 1942 until on or about September 29, 1945, Stan Lee was on active duty in the United States Army.

9.      During the time that he was on active duty with the United States Army, Stan Lee wrote scripts on a freelance basis for comic books for Timely Comics and was paid by Timely Comics on a per page basis for said scripts.

10.     From on or about November 9, 1945 through the autumn of 1968, Stan Lee was employed by Timely Comics.

11.     Throughout the years of 1945 through the autumn of 1968, Timely Comics operated and distributed its comic books under several names, including *"Timely Comics"*, *"Atlas Comics"* and ultimately *"Marvel Comics"* (hereinafter "Marvel").

12.     Between 1945 and the autumn of 1968, a span of approximately twenty-three (23) years, Stan Lee never had any written contract of any kind with Timely Comics.

13.     Between 1945 and the autumn of 1968, Stan Lee was employed in the capacity as an "editor-in-chief" and "art director," but was not employed as a writer.

14.     Stan Lee's employment and compensation for his work as "editor-in-chief" and "art director" did not include any duties of creating new characters. All of the creating and/or developing of new characters was performed by Stan Lee during his spare time and were not part of his salaried positions. Stan Lee was free to sell his creations as he wished and did in fact sell such creations to Marvel and other third parties.

15.     Between 1941 and the autumn of 1968, Stan Lee co-created all of the following characters, among many others, all of which were co-created with the participation of certain other artists:

    (1)     Spider-Man;

3

(2)     The Fantastic Four;

(3)     Mr. Fantastic;

(4)     The Invisible Woman;

(5)     Human Torch, a/k/a Johnny Storm;

(6)     The Thing;

(7)     The Incredible Hulk;

(8)     X-Men;

(9)     Daredevil;

(10)    Silver Surfer;

(11)    Ant-Man, a/k/a Yellowjacket, Giant-Man, Goliath;

(12)    Iron Man;

(13)    Doctor Strange;

(14)    The Avengers;

(15)    Thor;

(16)    Doctor Doom;

(17)    Magneto;

(18)    Colonel Nicholas Joseph "Nick" Fury;

(19)    Galactus;

(20)    Green Goblin;

(21)    Doctor Octopus;

(22)    The Vulture;

(23)    Mysterio;

(24)    John Jonah Jameson, a/k/a J. Jonah Jameson, J.J., and J.J.J;

4

(25)    The Lizard;

(26)    The Rhino;

(27)    The Shocker;

(28)    Mary Jane, a/k/a Mary Jane Watson-Parker;

(29)    Gwen Stacy;

(30)    The Sandman;

(31)    Electro;

(32)    Kraven the Hunter;

(33)    MACH-IV, a/k/a Beetle, MACH-1, 2 and 3;

(34)    The Chameleon;

(35)    Boomerang;

(36)    Blacklash a/k/a Whiplash;

(37)    Kingpin;

(38)    Baron Wolfgang von Strucker;

(39)    Mentallo;

(40)    Fixer;

(41)    Hawkeye;

(42)    Wonderman;

(43)    The Wasp;

(44)    Scarlet Witch;

(45)    Quicksilver;

(46)    Odin;

(47)    The Absorbing Man;

5

(48)    Mangog;

(49)    Ulik;

(50)    Fandral, a/k/a Fandral the Dashing;

(51)    Hogun, a/k/a Hogun the Grim;

(52)    Volstagg;

(53)    Balder the Brave;

(54)    Skurge, The Executioner;

(55)    Enchantress;

(56)    The Mandarin;

(57)    Power Man, a/k/a Atlas, Smuggler, Goliath, Erik Josten;

(58)    Black Bolt;

(59)    Medusa;

(60)    Karnak;

(61)    Gorgan;

(62)    Triton;

(63)    Crystal;

(64)    Lockjaw;

(65)    Maximus, a/k/a Maximus the Mad;

(66)    The Inhumans;

(67)    The Skrulls;

(68)    Captain Marvel, a/k/a Captain Mar-vell;

(69)    Toad;

(70)    Mastermind;

(71)   Blob;

(72)   Cyclops;

(73)   Marvel Girl, a/k/a Jean Grey, Phoenix;

(74)   Iceman;

(75)   Angel, a/k/a Archangel, Warren Kenneth Worthington III; and

(76)   Beast.

All of the aforementioned characters shall hereinafter be collectively referred to as the "Creations."

16.   Stan Lee's Creations were not "works for hire" by Stan Lee for any person or entity, including the defendants.

17.   Stan Lee's Creations were not commissioned works for any person or entity, including the defendants.

18.   All of the Creations have been copyrighted by the Defendants and/or their predecessors in interest.

19.   After the autumn of 1968, Stan Lee worked for and was employed by a number of different companies, including Perfect Film and Chemical Corporation (under the subsidiary of Magazine Management Co.), Cadence Industries (which changed the name of Magazine Management Co. to Marvel Comics Group), New World Entertainment, Marvel Entertainment Group, Inc., Marvel Enterprises, Inc., and Marvel Entertainment, Inc.

20.   From the date that Marvel Entertainment Group, Inc. became Stan Lee's employer until approximately August of 1998, Stan Lee was receiving income from Marvel Entertainment Group, Inc. pursuant to a written contract. The terms of the contract included significant compensation to Stan Lee of $1,000,000.00 per year. Included in this Agreement was

7

permission for Marvel to use the Creations.

21.    On or about August of 1998, Marvel Entertainment Group, Inc., terminated Stan Lee's employment agreement, thereby releasing Stan Lee from any and all obligations to Marvel Entertainment Group, Inc., and re-vesting Stan Lee with all of his rights in the Creations.  When Marvel Entertainment Group, Inc. terminated Stan Lee, such termination also terminated any licenses granted to Marvel Entertainment Group, Inc. to use Stan Lee's co-creator rights in the Creations for their unilateral financial benefit.  When Marvel Entertainment Group, Inc. terminated Stan Lee, such termination also terminated any and all of Stan Lee's obligations to forbear in asserting, transferring and/or assigning his co-creator rights in the Creations.

22.    Defendants are the successors in interest to Marvel Entertainment Group, Inc.

23.    Upon information and belief, Marvel Enterprises, Inc. changed its name to Marvel Entertainment, Inc. in 2005, but both entities continue to conduct business.

24.    Plaintiff's ultimate predecessor in interest, Stan Lee Entertainment, Inc., a corporation which was previously organized and existing under the laws of the State of Delaware, was established on or about October 13, 1998.

25.    On or about October 15, 1998 Stan Lee executed an "Employment Agreement/Rights Assignment," which included an assignment in favor of Stan Lee Entertainment, Inc., which states, in pertinent part, as follows:

> "I [Stan Lee] assign, convey and grant to [Stan Lee Entertainment, Inc.] forever, all right, title and interest I may have or control, now or in the future, in the following: Any and all ideas, names, titles, characters, symbols, logos, designs, likenesses, visual representations, artwork, stories, plots, scripts, episodes, literary property, and the conceptual universe related thereto, including my name and likeness (the 'Property') which will or have been in whole or part disclosed in writing to, published, merchandised, advertised, and/or licensed by [Stan Lee Entertainment, Inc.], its

affiliates and successors in interest and licensees (which by agreement inures to [Stan Lee Entertainment, Inc.'s] benefit) or any of them and any copyrights, trademarks, statutory rights, common law, goodwill, moral rights and any other rights whatsoever in the Property in any and all media and/or fields, including all rights to renewal or extensions of copyright and make applications or institute suits therefore (the 'Rights')."

(Said assignment shall hereinafter be referred to simply as the "October 15, 1998 Rights Assignment".)

26.     In return for Stan Lee's assignment of his Creations, Stan Lee Entertainment, Inc. and/or its successors in interest conveyed to Stan Lee shares in the companies, agreed to pay and did, in fact, pay to Stan Lee approximately $250,000.00 per year in salary, bonuses and other compensation, and also provided certain other items of consideration as set forth therein, including over 3.5 million shares in Stan Lee Media stock, which had a market value of over $100 million in February of 2000.

27.     The October 15, 1998 Rights Assignment was also ratified by Stan Lee over a year later on or about October 19, 1999, in an Amendment to Employment Agreement/Assignment Agreement. It is important to note that the Amendment contained express representations by Stan Lee that the Amendment was being signed after consultation with his financial consultants and legal counsel.

28.     At the time the October 15, 1998 Rights Assignment was executed, Stan Lee was not employed by any other person or entity.

29.     Since plaintiff's acquisition of the October 15, 1998 Rights Assignment, said assignment has never been terminated and continues to be in full force and effect.

30.     On or about November 23, 1998, Stan Lee individually entered into an Employment Agreement (hereinafter referred to as the "November 23, 1998 Employment

9

Agreement") with the defendants bearing an effective date of November 1, 1998.

31.     Contrary to the terms of the October 15, 1998 Rights Assignment, the November 23, 1998 Employment Agreement purports to convey to defendant, MARVEL CHARACTERS, INC., a non-exclusive license of Stan Lee's name and likeness, among other things.

32.     Contrary to the terms of the October 15, 1998 Rights Assignment, the November 23, 1998 Employment Agreement purports to convey to defendant, MARVEL CHARACTERS, INC., with the warranty that such properties and rights had not been previously assigned, licensed, pledged or otherwise hypothecated, to anyone other than the defendant, MARVEL CHARACTERS, INC., its affiliates, predecessors or their designees, the following:

> "forever throughout the universe all right, title and interest solely and exclusively which you may have or control or which you may have had or controlled in the following: any and all ideas, names, titles, characters, symbols, logos, designs, likenesses, visual representations, artwork, stories, plots, scripts, comic books or comic strips, episodes, literary property, and the conceptual universe related thereto which will or have been in whole or in part disclosed in writing to, published, merchandised, advertised, and/or licensed by [defendant, MARVEL CHARACTERS, INC.], its affiliates or their predecessors and successors in interest and licensees (which by agreement inures to Marvel's benefit) or any of them (the "Property") and any copyrights, trademarks, statutory rights, common law, goodwill, moral rights and any other rights whatsoever in the Property in any and all manner and media and/or fields, including all rights to renewal or extensions of copyright or trademarks and to recover for past infringement and make application or institute suits therefore (the "Rights")."

33.     The defendants had actual, constructive and/or inquiry notice of the existence of the October 15, 1998 Rights Assignment at the time that defendants executed the November 23, 1998 Employment Agreement and also knew of facts sufficient to put them on notice of inquiry into the possibility that there might be another assignment superior to theirs.

34.     The defendants having had actual, constructive and/or inquiry notice of the

10

existence of the October 15, 1998 Rights Assignment, and knowing of facts sufficient to put them on notice of inquiry into the possibility that there might be another assignment superior to theirs, was not a bona fide purchaser of the purported assignment of rights and properties contained therein with regard to the Creations.

35.     At all times material hereto, the plaintiff, as well as its predecessors in interest, did all things required of them pursuant to the October 15, 1998 Rights Assignment in order to retain ownership of Stan Lee's co-creator rights in the Creations.

36.     The October 15, 1998 Rights Assignment predates the November 23, 1998 Employment Agreement, and to the extent that such assignments attempt to convey the same rights, the October 15, 1998 Rights Assignment, being first in time, is first in right.

37.     The October 15, 1998 Rights Assignment was recorded by the plaintiff on or about November 28, 2006 with the United States Copyright Office.

38.     The November 23, 1998 Employment Agreement has never been recorded with the United States Copyright Office.

39.     Upon information and belief, the defendants, independently and/or in collusion with Stan Lee, intentionally concealed the material terms of the November 23, 1998 Employment Agreement, as well as the executed document itself, from the public, from its shareholders and from the plaintiff.

40.     Since November 23, 1998 Employment Agreement was executed, the defendants have apparently and consistently disclosed virtually all other significant contracts and material events, employee-related and otherwise, to the Securities and Exchange Commission ("SEC") and the public in general, contemporaneous with the occurrence. Upon information and belief, the defendants intentionally concealed the existence of and the material terms of the November

11

23, 1998 Employment Agreement from the SEC, its shareholders, the public in general and from the plaintiff.

41.     Contrary to the plaintiff's ownership rights to same, the defendants have used, marketed, licensed, merchandised, promoted, advertised and otherwise exploited the Creations for their own financial benefit, and without the participation, authority and consent of plaintiff. Defendants have used or licensed Stan Lee's name and/or likeness in conjunction with their efforts.

42.     Contrary to the plaintiff's ownership rights to same, the defendants have excluded the plaintiff from, have denied the plaintiff and have otherwise not paid to the plaintiff, plaintiff's share of the income, proceeds and profits from defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Creations.  Defendants have used or licensed Stan Lee's name and/or likeness in conjunction with their efforts.

43.     As the defendants have received income, proceeds and profits from the defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Creations, the defendants have a duty to account to and pay to plaintiff, as assignee of Stan Lee, fifty per cent (50%) of said income, proceeds and profits.

44.     At all times material hereto, the defendants, their predecessors in interest, if any, and all of the Stan Lee's previous employers, have conceded and admitted that Stan Lee is the co-creator of all of the Creations.

<u>COUNT I: DEMAND FOR ACCOUNTING OF PROFITS</u>

45.     Plaintiff repeats and realleges each and every allegation contained in paragraphs (1) through (44) above as if fully set forth herein.

46.     This is an action in equity seeking the division of certain income, proceeds and

LIBNY/4586401.4

profits, obtained by defendants by and through defendants' unilateral and unauthorized use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Creations, all of which were co-created by Stan Lee and defendants.

47.    At all times material hereto, the defendants, as successors in interest have only been an equal owner-in-common with plaintiff of all of the Creations.

48.    Contrary to the plaintiff's ownership rights to same, the defendants have used, marketed, licensed, merchandised, promoted, advertised and otherwise exploited the Creations for their own financial benefit, and without the participation, authority and consent of plaintiff.

49.    Contrary to the plaintiff's ownership rights to same, the defendants have excluded the plaintiff from, have denied the plaintiff and have otherwise not paid to the plaintiff, plaintiff's share of the income, proceeds and profits from defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Creations.

50.    The defendants have a duty to account to and pay to plaintiff fifty per cent (50%) of the income, proceeds and profits derived from defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Creations.

51.    Equity and justice require that defendants account to the plaintiff for any and all income, proceeds and profits from the defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Creations.

52.    Equity and justice require that defendants pay to the plaintiff, and that this Court enter an award of damages in favor of plaintiff, in an amount equal to fifty per cent (50%) of any and all income, proceeds and profits derived from the defendants' use, marketing, licensing, merchandising, promotion, advertising and exploitation of the Creations.

53.    With regard to those equitable aspects of this cause, the plaintiff has no adequate

13

remedy at law.

## COUNT II: ACTION FOR DECLARATORY RELIEF

54.     Plaintiff repeats and realleges each and every allegation contained in paragraphs (1) through (53) above as if fully set forth herein.

55.     Plaintiff seeks a declaratory judgment that plaintiff is a co-owner of the Creations, together with a claim for damages and other injunctive relief as set forth herein.

56.     Plaintiff brings this action for a declaratory judgment that defendants are not the sole owner of the Creations and that defendants are barred from so contending.

57.     Defendants have acknowledged and conceded that Stan Lee was and is the co-creator of the Creations.

58.     Plaintiff is the owner of Stan Lee's rights and properties, including but not limited to his co-creator rights in the Creations, by way of the October 15, 1998 Rights Assignment, and Plaintiff is a co-owner of the Creations.

59.     The defendants have asserted an actual, present, adverse and antagonistic interest in the Creations.

60.     As a direct and proximate result of the actions of the defendants as described herein, the plaintiff has also suffered damages.

61.     With regard to those equitable aspects of this cause, the plaintiff has no adequate remedy at law.

62.     Based upon the foregoing, there is a bona fide, actual, present and practical need for a declaratory judgment from this Court.

63.     Based upon the foregoing, the declaratory judgment sought deals with a present, ascertained, or ascertainable state of facts and/or a present controversy as to the state of facts.

LIBNY/4586401.4

64.    Based upon the foregoing, the plaintiff is insecure and uncertain with respect to its rights, status and other equitable and legal relations regard the October 15, 1998 Rights Assignment and the subsequent November 23, 1998 Employment Agreement, and is in need of a declaratory judgment from this Court affording relief from such insecurity and uncertainty.

## COUNT III: CONSTRUCTIVE TRUST

65.    Plaintiff repeats and realleges each and every allegation contained in paragraphs (1) through (64) above as if fully set forth herein.

66.    Based upon the foregoing, the defendants have knowingly and wrongfully used, marketed, licensed, merchandised, promoted, advertised and exploited the Creations, of which plaintiff is the legal co-owner.

67.    At all times since November 1, 1998, the defendants have been on actual, constructive and/or inquiry notice of the October 15, 1998 Rights Assignment.

68.    Equity and justice require that defendants be deemed to hold fifty per cent (50%) of any and all income, proceeds and profits from the defendants' use of, marketing of, merchandising of, promoting of, advertising of and exploitation the Creations as described herein, in constructive trust for the plaintiff.

69.    Plaintiff seeks the imposition of a constructive trust over fifty per cent (50%) of the entirety of the income, proceeds and profits from the defendants' use of, marketing of, merchandising of, promoting of, advertising of and exploitation of the Creations.

70.    With regard to those equitable aspects of this cause, the plaintiff has no adequate remedy at law.

## COUNT IV: INTERFERENCE WITH RIGHT OF PUBLICITY

71.    Plaintiff repeats and realleges each and every allegation contained in paragraphs

LIBNY/4586401.4

(1) through (70) above as if fully set forth herein.

72.     Plaintiff, as exclusive assignee of Stan Lee pursuant to October 15, 1998 Rights Assignment, and specifically pursuant to the provisions exclusively assigning to plaintiff any and all of Stan Lee's right, title and interest in his name and likeness, is protected by section 43(a) of the Lanham Act.

73.     Defendants have and continue to use, market, merchandise, promote, advertise, license and exploit the name and/or likeness of Stan Lee for their financial benefit.

74.     Defendants' actions in using, marketing, merchandising, promoting, advertising, licensing and exploiting the name and/or likeness of Stan Lee have been conducted without any authority by plaintiff in violation of Section 43(a) of the Lanham Act.

75.     Upon information and belief, the defendants have derived a financial benefit from utilizing Stan Lee's name and/or likeness in the manner described in this cause of action.

76.     By reason of the foregoing, the plaintiff has been damaged in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. § 1116 *et seq.*

## COUNT V: INTERFERENCE WITH RIGHT OF PUBLICITY IN VIOLATION OF NEW YORK CIVIL RIGHTS LAW § 51

77.     Plaintiff repeats and realleges each and every allegation contained in paragraphs (1) through (76) above as if fully set forth herein.

78.     By reason of the foregoing, the plaintiff, as exclusive assignee of Stan Lee pursuant to October 15, 1998 Rights Assignment, and specifically pursuant to the provisions exclusively assigning to plaintiff any and all of Stan Lee's right, title and interest in his name and likeness, is protected by New York Civil Rights Law § 51.

79.     Defendants have and continue to use, market, merchandise, promote, advertise,

LIBNY/4586401.4

license and exploit the name and/or likeness of Stan Lee for their financial benefit.

80.     Defendants' actions in using, marketing, merchandising, promoting, advertising, licensing and exploiting the name and/or likeness of Stan Lee have been conducted without any authority by plaintiff.

81.     By engaging in such acts, the defendants have violated New York Civil Rights Law § 51.

82.     Upon information and belief, the defendants have derived a financial benefit from utilizing Stan Lee's name and/or likeness in the manner described in this cause of action.

83.     As a direct result of the defendants' actions as set forth in this cause of action, the plaintiff has been damaged in an amount not yet ascertained and is entitled to the remedies provided by the New York Civil Rights Law § 51.

WHEREFORE, the plaintiff respectfully requests that this Court enter a judgment awarding to the plaintiff:

1.     Declaring that plaintiff is a co-owner of each and every one of the Creations as described herein;

2.     Awarding to the plaintiff damages as against defendants equal to fifty per cent (50%) of any and all income, proceeds and profits realized by defendants' use, marketing, licensing, merchandising, promoting, advertising and exploiting of the Creations;

3.     Declaring defendants to be constructive trustees of plaintiff with regard to fifty per cent (50%) of any and all income, proceeds and profits realized by defendants from the defendants' use, marketing, licensing, merchandising, promoting, advertising and exploitation of the Creations;

4.     Awarding to the plaintiff its damages and profits as against defendants, together

17

with all other remedies provided by 15 U.S.C. § 1116 *et seq.* and that such damages or profits be trebled;

     5.    Awarding to the plaintiff its damages as against defendants for violating the rights of publicity it owns;

     6.    Awarding its damages as against defendants, together with all other remedies provided by 15 U.S.C. § 1125(d), including trebling;

     8.    Awarding to plaintiff prejudgment and post-judgment statutory interest for all amounts of damages awarded;

     9.    Awarding to plaintiff its cost and attorney fees;

     10.    Awarding plaintiff exemplary damages; and

     11.    Granting such additional relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The plaintiff, by and through its undersigned counsel, hereby demands a jury trial on any and all issues so triable.

Dated: March 15, 2007
       New York, New York

Ethan Horwitz (EH 7152)
Michael B. Schiffer (MS 5555)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY  10022
212.459.7455
*Attorneys for Plaintiff*

Of Counsel:

Sean Sheppard, Esq.
The Andersen Firm
1200 Plantation Island Drive South, Suite 220
St. Augustine, FL  32080
904.471.5040

18